In the Matter of NATIONAL FUEL GAS DISTRIBUTION CORPORA-
TION, Petitioner, v PUBLIC SERVICE COMMISSION OF THE
STATE OF NEW YORK, Respondent.

Third Department, March 28, 1985

**APPEARANCES OF COUNSEL**

*Le Boeuf, Lamb, Leiby & MacRae* (*Ronald D. Jones, Bruce V. Miller* and *Michael W. Youkon* of counsel), and *Phillips, Lytle, Hitchcock, Blaine & Huber* (*Heino H. Prahl* of counsel), for petitioner.

*David E. Blabey* (*Jonathan D. Feinberg* of counsel), for respondent.

*Bracewell & Patterson* (*Joe H. Foy* of counsel), for Templeton Energy, Inc., *amicus curiae.*

## OPINION OF THE COURT

Mahoney, P. J.

Petitioner, National Fuel Gas Distribution Corporation (hereinafter National Fuel), is a natural gas distribution company which is in the business of selling natural gas to customers in a number of States, including New York. It is a subsidiary of National Fuel Gas Company (hereinafter NFGC), which is a public utility holding company. National Fuel is subject to regulation by respondent, the Public Service Commission of the State of New York (hereinafter PSC). In January of 1983, National Fuel filed with the PSC a request for a rate increase. In the course of ruling on this request, the PSC disapproved a particular escalation clause in contracts between National Fuel and local gas production companies and required that the debt of another subsidiary of NFGC be included in the capitalization of National Fuel for the purpose of rate setting. National Fuel commenced this CPLR article 78 proceeding challenging the decision of the PSC with respect to these two issues. The proceeding has been transferred to this court for disposition.

National Fuel purchases a significant amount of natural gas from local producers. In 1974, National Fuel began to include an escalation clause in the contracts with local producers. The clause, referred to as a "three-pipeline" escalation clause, provided for price increases indexed to the price NFGC was paying to the three major interstate gas producers. The PSC found that the contracts which included the three-pipeline escalation clause were not in the public interest.[1]

Public Service Law § 110 (4) provides that: "All written contracts * * * for the purchase of * * * gas * * * before the same shall be effective, shall first be filed with the commission, and no charge for such * * * gas * * * shall exceed the just and reasonable charge for such * * * gas * * * In any proceeding to determine the reasonable cost of any such * * * gas * * * so sold and delivered or to be delivered to such purchaser the burden of proof shall be on the utility company purchasing the same. If it be found that any such contract or arrangement is not in the public interest, the commission, after investigation and hearing, is hereby authorized to disapprove such contract or arrangement." In reviewing the PSC's exercise of authority under this section,

---

1. National Fuel stopped using the three-pipeline escalation clause in contracts executed after October 1975. Instead, it included a "FPC" escalation clause developed jointly with the staff of the Department of Public Service. The contracts executed prior to this were not modified by replacing the three-pipeline escalation clause.

the scope of review is limited to determining whether the decision has a rational basis and is supported by substantial evidence in the record (*see, Matter of Consolidated Edison Co. v Public Serv. Commn.*, 98 AD2d 377, 384, *lv denied* 62 NY2d 602). The PSC's disapproval was primarily based on three factors. First, the three-pipeline escalation clause does not provide a ceiling on escalation. While there is a ceiling imposed by current Federal regulations, the potential for unreasonable price escalations does exist. Second, the contracts do not contain provisions reflecting any refunds to National Fuel from the three major interstate gas producers in the indexing of price increases for local gas producers.[2] Finally, the contract with the largest of the local gas producers does not contain a provision allowing National Fuel to terminate the contract in the event price increases rendered it uneconomical to continue to purchase gas. National Fuel presented evidence tending to establish that the three-pipeline escalation clause was just and reasonable. However, the grounds offered by the PSC are supported by substantial evidence in the record, and its decision that such grounds warranted disapproval of the contracts cannot be said to lack a rational basis.

Turning to the second issue, one of the considerations in setting a utility's rates is its rate of return. In order to calculate the rate of return, the utility's total capitalization must be determined. As indicated above, National Fuel is a subsidiary of NFGC, which corporation provides all of National Fuel's capital. There are several other subsidiaries whose capital is provided by NFGC. Because of these circumstances, the capitalization of NFGC is used for the purpose of setting National Fuel's rates. One of the subsidiaries of NFGC, Seneca Resources Corporation (hereinafter Seneca), is in the business of exploration for, and development of, natural resources. Seneca is not regulated by the PSC. Unlike the other subsidiaries, Seneca's capital is not provided by NFGC. Rather, it is financed entirely by short-term loans secured by its own assets. However, NFGC has acted as guarantor on Seneca's notes, thereby allowing it to borrow at a more favorable rate.

In setting forth its capitalization, National Fuel excluded from total debt the short-term debt of Seneca. The Department

2. In a Federal court action between National Fuel and one of the local gas producers, it was determined that, as the three-pipeline escalation clause was written, it would be a breach of contract for National Fuel to calculate refunds received from the three major interstate producers into the indexing of the price increases due local gas producers (*Paragon Resources v National Fuel Gas Distrib. Corp.*, 695 F2d 991).

of Public Service (hereinafter Department) took the position that a debt/equity ratio should be imputed to Seneca. The administrative law judge found that the Department failed to offer sufficient proof in support of its formulation and recommended that National Fuel's proposal to exclude Seneca's short-term debt be approved. The PSC agreed that the Department's proof was insufficient, but ruled that the entire short-term debt of Seneca was to be included in National Fuel's capitalization. National Fuel challenges this determination on the grounds that it is inconsistent with prior policy of the PSC and that it is irrational and unsupported by substantial evidence. We disagree.

National Fuel contends that the PSC had, in prior rate cases, set forth a policy of excluding the capitalization of unregulated affiliates from the capitalization of the utility. This contention is not supported by the record. It is apparent that the decision of whether, and to what extent, to include the capitalization of an unregulated affiliate is not determined by application of a broad rule, but by consideration of a number of factors, one of the most important of which is the extent to which the unregulated affiliate is capitalized, directly or indirectly, by the utility. National Fuel has not established that its financial relationship with Seneca is so identical to that of the utilities involved in the prior cases with their unregulated affiliates that identical treatment is warranted.

National Fuel also points out that in its two prior rate cases, its proposal to exclude Seneca's short-term debt was allowed. However, in each of those cases, the Department acquiesced in such accounting treatment and, thus, the issue was not presented to the PSC on exceptions. In 1978, when this issue was last presented to the PSC on exceptions, it ruled, as it did herein, that Seneca's short-term debt had to be included. Thus, we reject the contention that the PSC was bound to accept National Fuel's accounting treatment of Seneca's short-term debt due to its prior decisions regarding National Fuel or other utilities.

Turning to National Fuel's contention that the PSC's decision to include Seneca's short-term debt in its capitalization was irrational and unsupported by substantial evidence, we recognize that, in an area such as this which is well within the expertise of the agency, our scope of review is extremely limited. The question before us is not whether, based on accepted accounting principles, the short-term debt of Seneca should be included in National Fuel's capitalization, but, whether there is a rational basis for the PSC's decision to do so. The capitalization shows what percentage of the utility's capital consists of

debt, customer deposits, preferred stock and common equity. If Seneca's short-term debt is not included in National Fuel's capitalization, the debt ratio would be decreased and the equity ratio would be correspondingly increased, resulting in a higher rate of return. The PSC took the position that such an accounting treatment improperly inflated the equity ratio. It held that, since Seneca's capital could not be acquired but for its status as part of the NFGC system, the system was indirectly providing some equity to support the short-term debt. Further, a utility's capitalization structure is used to determine an appropriate rate of return, which is then applied to its rate base. In the instant case, a potential investor in NFGC would, because of its financial relationship with Seneca, consider the short-term debt of Seneca to be relevant in making an investment decision. In conclusion, the PSC's determination is neither irrational nor unsupported by substantial evidence.

MIKOLL, J. (concurring in part and dissenting in part). I concur with the majority's conclusion to confirm the PSC's disapproval of the "three-pipeline" escalation clauses under its statutory authority set out in Public Service Law § 110 (4). The PSC's determination is supported by substantial evidence. However, I conclude that the PSC acted arbitrarily and without substantial evidentiary support in its determination to include Seneca's short-term debt in National Fuel's capitalization.

While the resolution of matters of great technical complexity are best entrusted to the agency charged with their resolution (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459), this court has also held to the premise that "prior determinations by the Commission, inconsistent with its present posture, tend to support a conclusion that its determination is irrational" (*Matter of New York Tel. Co. v Public Serv. Commn.*, 64 AD2d 232, 246, *lv denied* 46 NY2d 710).

The PSC here admitted that in setting rates of other utilities, it has adjusted their capitalization so as to remove nonregulated subsidiaries. The PSC admitted that the exclusion of Seneca's capital from the consolidated capital structure was proposed by National Fuel in a prior rate case, was not disputed for purposes of that case by the witness for the Department of Public Service, was mentioned by the administrative law judge, and was reflected in the rates established by the PSC in that case.

The PSC's belated attempt to distinguish its earlier exclusion of Seneca's capital from its present treatment on the ground that the issue was not squarely raised in the prior case is not legally supportable. The contention is belied by the PSC's admission

that the exclusion was accepted in interim cases after the administrative law judge's determination in the prior case. Such indorsement by an administrative law judge in the prior case, "when approved and confirmed by the commission and ordered filed in its office, shall be and be deemed to be the order of the commission" (Public Service Law § 11).

The record also supports the conclusion that Seneca does not effect a burden on National Fuel ratepayers. The inclusion of Seneca's debt in the rate of return for National Fuel deprived it of a fair rate of return. The PSC thus acted arbitrarily and without substantial evidentiary support for its determination.

There should be a modification of the PSC's determination by annulling so much thereof as reduced National Fuel's allowed rate of return by including an unregulated affiliate's debt in its consolidated capital structure, and a remittal for further proceedings.

MAIN, YESAWICH, JR., and HARVEY, JJ., concur with MAHONEY, P. J.; MIKOLL, J., concurs in part and dissents in part in an opinion.

Determination confirmed, and petition dismissed, without costs.