NORTH MICHIGAN LAND & OIL CORPORATION v PUBLIC
SERVICE COMMISSION

ENERGY RESERVES, INC v PUBLIC SERVICE COMMISSION

HERSEE v PUBLIC SERVICE COMMISSION

Docket Nos. 162164, 162190, 162191. Submitted January 3, 1995, at
Lansing. Decided June 9, 1995, at 9:00 A.M. Leave to appeal
sought.

Consumers Power Company, on November 27, 1991, filed in the
Public Service Commission an application under 1929 PA 9,
MCL 483.101 *et seq.*; MSA 22.1311 *et seq.*, for approval of
proposed changes to price and other terms of the contracts
between Consumers and its intrastate natural gas suppliers for
the period of December 1, 1991, to March 31, 1993.

One of the contracts involved Amoco Production Company.
That contract had commenced on July 1, 1977, and was to have
remained effective until at least November 1, 1991, and from
year to year thereafter, subject to cancellation by either party.
For periods after June 30, 1978, the contract had set the price
of gas either at $1.995 per thousand cubic feet (Mcf) as of July
1, 1978, with a five percent increase every six months or at the
reported market price for No. 2 fuel oil, whichever was lower.
Under a settlement agreement approved by the PSC on August
29, 1989, Consumers and its suppliers had agreed to maximum
prices of $3.50 per Mcf for 1989, $3.924 per Mcf for 1990, and
$3.558 per Mcf until November 1991. By a letter agreement
dated August 7, 1989, which was never filed with the PSC,
Amoco's successors in interest and Consumers had extended
the 1977 contract to November 1, 1995, extended the maximum
prices set by the settlement agreement, and provided for a
return to the price formula of the original contract after
December 1, 1991.

The PSC issued an opinion and order that approved a pur-
chase price of $2.80 per million British thermal units (MMBtu)
and determined that the November 1, 1991, termination date of
the 1977 contract was still effective, thus rejecting the argu-

REFERENCES

Am Jur 2d, Public Utilities § 9.
See ALR Index under Utilities.

ment of Amoco's successors in interest that the PSC had approved the extension of the contract to November 1, 1995. Amoco's successors in interest, including North Michigan Land & Oil Corporation, Energy Reserves, Inc., and Idonea Hersee, appealed, and their appeals were consolidated.

The Court of Appeals *held:*

1. The Public Service Commission is authorized under § 10 of Act 9, MCL 483.110; MSA 22.1320, to review alterations or amendments of common-purchaser contracts for natural gas and to determine whether the contractual price set by the natural gas producers and a public utility is just and reasonable. Review by the PSC is to be in the same manner and by the same process provided by 1909 PA 106, MCL 460.551 *et seq.*; MSA 22.151 *et seq.*, for PSC regulation of the rates for electricity transmitted in the state. Because the statutory review authority exists when the contracts are entered into, the exercise of that review power does not constitute a constitutionally prohibited impairment of contracts.

2. The PSC's approval of the parties' settlement agreement does not, under principles of res judicata, preclude the PSC's review of the proposed changes to the contract because the settlement agreement concerned prices through November 1991 and the proposed changes affected prices beyond that date. Consumers is not estopped from seeking the proposed changes. Producers who enter into contracts with common purchasers are charged with the knowledge that they are subject to the jurisdiction of the PSC to the extent that the pricing provisions in their contracts with common purchasers and any alterations or amendments in the price are subject to PSC approval.

3. The PSC properly denied reimbursement of compression fees and severance taxes that Consumers agreed to pay. Such fees and taxes are expenses of production usually shared by producers and owners of royalty interests and presumably are included in the producers' costs and recovered in the price paid by the utility.

4. The PSC did not err in determining that the parties could terminate the contract after November 1, 1993, as originally provided in the contract.

5. The parties' letter agreement reflected an alteration or amendment of the price of gas, at least for the period ending November 30, 1991. The change was subject to review by the PSC even though the parties had specified in the letter agreement that they would return to the original price formula after December 1, 1991.

6. The PSC's statutory authority to review the proposed

changes to the contract is not affected by considerations of equity with regard to the detrimental effects on the appellants of Consumers' failure to file the letter agreement with the PSC.

7. The PSC is authorized by Act 9 to determine the validity of the parties' letter agreement and their respective rights.

8. The appellants failed to support their claim that the decision of the PSC was influenced by certain unflattering comments made about the parties' conduct.

9. The change from Mcf to MMBtu as the unit for pricing is within the terms of the contract, which provided for price adjustments based on Btu content per cubic foot.

10. The appellants failed to present clear and convincing evidence that the price set by the PSC is unlawful or unreasonable.

11. Section 10 of Act 9 is not devoid of standards, vague, or uncertain and does not deprive the appellants of due process in adopting the procedures of 1909 PA 106 for PSC review of electric rates.

12. Psc review under Act 9 of price changes in contracts between common purchasers and natural gas producers represents a valid exercise of police power in view of the legitimate public interest in the ultimate cost of natural gas to ratepayers.

13. Act 9 does not violate equal protection. When a common purchaser seeks PSC approval of a price decrease, the affected producers, as interested parties in the proceeding, have an equal right to argue against the decrease or to seek an increase.

14. The constitutional protection against the impairment of contracts is not implicated in the PSC's reduction of the price of gas sold by the appellants to Consumers.

15. Psc review under Act 9 does not violate the principle of separation of powers. Act 9 and 1909 PA 106 contain sufficient standards to guide the PSC.

Affirmed.

PUBLIC UTILITIES — NATURAL GAS — CONTRACTS BETWEEN SUPPLIERS AND UTILITIES — PUBLIC SERVICE COMMISSION.

The Public Service Commission has the authority to regulate changes in contracts between a public utility and its natural gas suppliers, including changes in the price of the gas; the commission's review of such changes in the same manner it reviews rates for electricity transmitted in the state does not violate principles of due process, equal protection, or separation of powers (MCL 483.101 *et seq.*, 460.551 *et seq.*; MSA 22.1311 *et seq.*; 22.151 *et seq.*).

*J. Andrew Domagalski* and *Jeffrey D. VanLeuwen,* for North Michigan Land & Oil Corporation and others.

*Lynch, Gallagher, Lynch & Martineau* (by *Byron P. Gallagher*), for Idonea Hersee and others.

*Jerome Colligan,* for Energy Reserves, Inc.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Don L. Keskey, William W. Derengoski,* and *Patricia S. Barone,* Assistant Attorneys General, for Public Service Commission.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting, P.C.* (by *William D. Parsley, Harvey J. Messing,* and *Gary L. Field*), and *David A. Mikelonis, Jon R. Robinson, Frank R. Knox,* and *Francis X. Berkemeier,* for Consumers Power Company.

Before: Fitzgerald, P.J., and Marilyn Kelly and G. N. Bashara, Jr.,* JJ.

Per Curiam. In these consolidated cases, appellants appeal as of right from a February 8, 1993, decision of the Michigan Public Service Commission (PSC) on Consumers Power Company's application for a change in the price it pays appellants for natural gas. The following statement of facts is condensed from the PSC decision.

Under a July 1, 1977, gas purchase contract, Amoco Production Company agreed to sell to Consumers gas produced in Manistee, Benzie, Wexford, Grand Traverse, Kalkaska, Antrim, Crawford, Otsego, and Montmorency Counties. Appellants are Amoco's successors in interest. The con-

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

tract was to remain in effect until at least November 1, 1991, and from year to year thereafter, subject to cancellation by either party.

The contract stated that, for periods after June 30, 1978, gas was priced at the lower of a base price and an alternate price. The base price was $1.995 per thousand cubic feet (Mcf) as of July 1, 1978, and escalated by five percent every six months. The alternate price was the reported market price for No. 2 fuel oil.

In Case No. U-8287, Consumers' 1986 gas cost recovery plan, the psc held in a January 27, 1987, order that the intrastate component of Consumers' gas supply was too costly. That prompted Consumers to seek renegotiation of its intrastate gas purchase contracts, including the 1977 contract.

Eventually, a settlement was reached. Consumers, numerous producers, and other parties entered into a comprehensive settlement agreement, which was approved by the psc on August 29, 1989, setting ceiling prices for Consumers' purchases of natural gas at $3.050/per Mcf for 1989, $3.924/per Mcf for 1990, and $3.558/per Mcf until November 1991.

In the meantime, Consumers and appellants entered into a separate letter agreement, dated August 7, 1989, which extended the original term of the 1977 gas contract from November 1, 1991, to November 1, 1995, among other things. This agreement superseded a previous agreement between the parties executed on January 1, 1988. That agreement had also provided for an extension of the original ceiling prices in 1989, 1990, and 1991 identical to those set forth in the U-8287 settlement agreement. However, it further provided for a return to the price formula of the original contract after December 1, 1991.

The existence of the private agreement between

Consumers and the individual producers was rec-
ognized in the August 29, 1989, settlement agree-
ment approved by the PSC in Case No. U2-08287.
The recognition took the form of a prohibition of
recovery from ratepayers of any extra expense
incurred due to variation from the terms of the
settlement agreement and the letter agreement.
However, neither the parties' August 7, 1989, indi-
vidual agreement nor their previous agreement of
January 1, 1988, was submitted to or approved by
the PSC.

On November 27, 1991, a few days before the
expiration of the period covered by the PSC-ap-
proved settlement agreement in Case No. U-8287,
Consumers commenced the instant proceeding
with the PSC.

Consumers' application, filed pursuant to 1929
PA 9, MCL 483.101 *et seq.*; MSA 22.1311 *et seq.*,
sought approval of a proposed price reduction and
other modifications of its natural gas contracts
with producers. Specifically, Consumers sought ap-
proval of a price of $2.80 per million British
thermal units (MMBtu) as a just and reasonable
price for purchases from December 1, 1991 to
March 31, 1993. Also, it sought relief from contrac-
tual purchase obligations that had become uneco-
nomical. It sought, also, a determination that gas
it was obliged to purchase be recovered as part of
its gas-cost recovery, pursuant to 1982 PA 304,
MCL 460.6h *et seq.*; MSA 22.13(6h) *et seq.*

On February 8, 1993, the PSC issued a fifty-one-
page opinion and order, reducing the contract
price to $2.80 per MMBtu, inclusive of "add-on"
charges, among other things. The PSC also held
that the original November 1, 1991, cancellation
date under the 1977 contract was still in effect.
Thus, any party could exercise the right of cancel-
lation on the next anniversary cancellation date,

November 1, 1993, or November 1 of any subsequent year. The PSC rejected appellants' reliance upon their August 7, 1989, private agreement with Consumers. The agreement purported to extend the term of the contract until November 1, 1995. It also rejected appellants' argument that this amendment of the original contract had been approved when the PSC approved the settlement agreement in Case No. U-8287. The PSC found that because the amendment had never been approved by it, it was legally ineffective.

### NORTH MICHIGAN AND ENERGY RESERVES APPEALS

We discuss first the issues raised by North Michigan and others and Energy Reserves, because several of them are identical. Then, we will discuss the constitutional issues raised by the parties, including, principally, Hersee.

### JURISDICTION

North Michigan and Energy Reserves argue that the PSC lacks jurisdiction under Act 9 to change a contract price for gas. They assert that price approval authority is limited to preventing discrimination against producers and to promoting conservation. Appellants distinguish the leading authorities on a number of grounds.

The authorities are *Antrim Resources v Public Service Comm,* 179 Mich App 603; 446 NW2d 515 (1989), and *Miller Bros v Public Service Comm,* 180 Mich App 227; 446 NW2d 640 (1989).

Those decisions recognize the PSC's authority to approve gas purchase prices between a common purchaser, such as Consumers, and Michigan producers under § 10 of Act 9, MCL 483.110; MSA 22.1320, which provides in part:

> Thereafter [filing initial price schedule] a going common purchaser or common carrier of natural gas may alter or amend its price paid, rates, charges and conditions of service by application to and *approval by the commission in the same manner and by the same process and under the same legal limitations and like right as are now provided by statute for the regulation by the commission of the rates for electricity transmitted in this state.* [Emphasis added.]

The statutory reference is to 1909 PA 106, MCL 460.551 *et seq.*; MSA 22.151 *et seq.*

In *Antrim Resources,* the central issue "concerned the producers' assertions that . . . the PSC did not have jurisdiction under § 10 of 1929 PA 9 to establish prices that Mich Con may pay for commonly purchased natural gas." 179 Mich App 608. The Court held that Act 9 was intended to grant the commission power to control and regulate corporations engaged in the business of purchasing or *selling* natural gas for public use. 179 Mich App 609. The Court concluded that "the statute quite clearly confers jurisdiction on the PSC to approve any alterations or amendments to the price a common purchaser may pay for natural gas." 179 Mich App 611. That jurisdiction includes the power "to inspect and interpret the price aspect of contracts entered into by common purchasers and to determine the reasonableness of requested price changes." 179 Mich App 615.

Contrary to appellants' contention, Act 9 was not designed solely to promote conservation and to prevent discrimination against producers. 179 Mich App 612. The rationale for the decision is that "[p]roducers who enter into contracts with common purchasers are charged with the knowledge that they are subject to the jurisdiction of the PSC to the extent that the pricing provisions in

their contracts with common purchasers and any alterations or amendments in the price are subject to PSC approval." *Id.* The purchase price is simply not a matter of private contract. 179 Mich App 615.

Finally, the Court held that commission scrutiny of prices was not a violation of the constitutional right against impairment of contract, because the contracts had been made after the statute took effect. 179 Mich App 616.

*Antrim Resources* was approved in *Miller Bros, supra* at 233, where the Court said:

> We agree with the reasoning and conclusion of the *Antrim Resources* panel that under Act 9 the PSC has jurisdiction to regulate changes and contract prices by way of approving the reasonableness of those prices. Section 10 of Act 9 clearly provides that contract price changes may be made "by application to and approval by" the PSC. And as in *Antrim Resources,* the PSC's actions in this case do not impair or infringe the producers' rights to freely contract. The producers were engaged in an extensively regulated area of commerce and executed their contracts after Act 9 had long been in existence.

Appellants also argue that the PSC has authority only to approve or disapprove an already agreed-upon price change. They claim that it exceeded its authority under the statute by "unilaterally" establishing a lower contract price in this case. Appellants' position has been rejected by this Court in cases upholding the PSC's authority to require that contract prices conform with its rates and tariffs, including pricing under initial contracts, as well as proposed amendments. *Midland Cogeneration Venture Limited Partnership v Public Service Comm,* 199 Mich App 286, 308-310; 501 NW2d 573 (1993); *Antrim Resources, supra* at 611.

### ESTOPPEL AND RES JUDICATA

All of the appellants contend that prices were fixed by the parties' private letter agreement of August 7, 1989, and ratified by the PSC's August 29, 1989, settlement agreement order in Case No. U-8287. They reason that the order was therefore res judicata and estopped Consumers from seeking price changes in this proceeding. They claim that the three criteria for res judicata are satisfied and that the PSC's August 29, 1989, order approving the settlement is final.

We disagree. Sections 10 and 11 of Act 9 require that utilities file gas purchase contracts with the PSC and that the PSC approve prices. *Antrim Resources, supra.* The prices agreed on by the parties' private agreement were not disclosed to the PSC and were not expressly approved by it. Moreover, the PSC's August 29, 1989, order approving the private settlement provided for price approvals for 1989 through November 1991. The settlement reserved to the parties the right to contest prices after November 30, 1991. Hence, as the PSC ruled, "Neither the settlement nor the order approving it can be read to authorize undisclosed private agreements that purport to govern pricing after November 30, 1991."

Further, as the PSC held, res judicata does not apply because, as discussed, approval of the settlement was not the equivalent of approving the 1989 private agreement. Nor did the settlement intend to fix prices after November 1991.

Moreover, as noted by the PSC, the settlement agreement in Case No. U-8287 specifically provides that the settlement and any order adopting it "shall not be cited or used as precedent in any other proceeding unless clearly stated otherwise." Also, the settlement "does not limit any party's

right to adopt different positions on similar issues in other administrative and/or related judicial proceedings."

Finally, as we held in *Antrim Resources,* "producers who enter into contracts with common purchasers are charged with the knowledge that they are subject to the jurisdiction of the PSC to the extent that the pricing provisions in their contracts with common purchasers and any alterations or amendments in the price are subject to PSC approval." 179 Mich App 612.

For that reason, too, Energy Reserves cannot claim that it obtained financing with the expectation that prices in the original purchase agreement would be honored. Therefore, as the PSC concluded, its "obligation to evaluate whether an amendment or alteration to a contract effects a just and reasonable price cannot be avoided by private agreements, and a person purchasing an interest as a seller under a preexisting contract cannot reasonably disclaim prior knowledge of the regulatory requirements imposed by Act 9."

### FEES AND TAXES

North Michigan claims that the PSC has no authority under Act 9 to deny reimbursement of compression fees and severance taxes that Consumers agreed to pay. They urge this is especially true where the utility did not request that relief in its application.

The PSC's decision on this point is not unlawful. Add-ons such as compression fees and severance taxes are expenses of production usually shared by producers and those who own royalty interests. 3 Williams, Oil & Gas Law, § 645.2, see also *Brown v Shell Oil Co,* 128 Mich App 111; 339 NW2d 709 (1983). They are presumably included in the pro-

ducers' costs and recovered in the price paid by the utility.

## TERMINATION DATE

North Michigan contends that the psc had no authority under § 10 to determine that the parties could terminate the private letter agreement after November 1, 1993, when the agreement continued the contract to November 1, 1995.

We find it unnecessary to address the issue of the psc's authority as North Michigan requests. The letter agreement never became effective, because it was not filed with or approved by the psc. Since it was not effective, the termination date of the 1977 contract remained in effect. Under that contract, either party could terminate the agreement effective November 1 by giving notice on August 1. At the time of the psc's decision, the earliest available cancellation date would have been November 1, 1993. In fact, the contract between North Michigan and Consumers was canceled as of November 1, 1993.

## ALTERATION OR AMENDMENT

North Michigan contends that the psc had no authority to set prices under § 10 because the parties did not "alter or amend" their prices. It urges that the letter agreement did not change the original pricing provisions of the subject contract. That document merely instituted prices during a limited period, at which time the original pricing provision of the original contract was reinstated. That original contract price never changed.

The contention is not meritorious. The letter agreement, on its face, recognized that it was an amendment of the 1977 contract. Moreover, the

agreement changed the price of gas specified in the original contract, at least for the period ending November 30, 1991.

It was thus an "alteration or amendment" of the original gas price, subject to review under § 10.

### CONSUMERS' FAILURE TO FILE

North Michigan and Energy Reserves contend that the PSC improperly relied on Consumers' failure to file the private agreement as the reason for changing prices, contrary to the price provisions of the agreement. They contend that paragraph M of the settlement agreement, referring to the private agreement, gave the PSC notice of the price agreement. Even if a separate filing was required, they argue, it is unjust and unreasonable for the PSC to use the utility's statutory violation as a means of exonerating the utility from its obligations under the private agreement.

These appellants argue that, had the utility timely filed, the PSC would have been obligated to make timely objections. Had it done so, they continue, Energy Reserves would have been aware of the objections before it purchased an interest in the contracts, relying on the effectiveness of the prices stated in them. Northern Michigan says that it has been penalized millions of dollars by Consumers' failure to carry out its obligations under Act 9.

We reject the arguments. Section 10 requires PSC approval of a price change. *Antrim Resources, supra.* The price changes in the letter agreement were not submitted to or approved by the PSC. The producers cannot suspend § 10 or rely on equitable considerations to supply statutory approval of price changes that were not revealed to the PSC.

Even if the letter agreement had been filed,

Consumers could have sought approval of the prices under Act 9, and the producers could not have relied on the prices set in the letter agreement.

## INTERPRETING THE CONTRACT

North Michigan claims that the PSC improperly exercised judicial power when it ruled regarding the validity of the letter agreement and declared the rights of the parties.

A similar contention was rejected in *Antrim Resources, supra,* when it was held that § 10 authorized the PSC to approve contract changes. Implicit in that authority is the fact that "the PSC will inspect and interpret the pricing provisions in these contracts to determine whether they conform with [PSC] rules and regulations." 179 Mich App 611-612. Therefore, the Court concluded that "the producers' contention that 1929 PA 9 does not grant the PSC jurisdiction and authority to interpret contracts between Mich Con and the producers is without merit." 179 Mich App 612.

## EXPANDED PRODUCTION

North Michigan says that there is no support for the PSC's criticism that the producer expanded its production to take maximum advantage of the negotiated price premium over the market price.

This point is not an important issue. The PSC made the comment in rejecting suggestions that a price determination be based in part on equitable considerations.

The PSC's comments were aimed at all parties. It observed that "none of the parties to the contract can fairly claim to have acted above reproach in negotiating and implementing the 1989 agreement."

Appellants have not shown that the PSC's unflattering comments about the parties' conduct influenced its decision.

### MCF OR MMBTU

North Michigan claims that the PSC lacked authority to set the price in MMBtu terms, because the contract called for payment on an Mcf basis.

The point is without merit. The 1977 contract called for a price adjustment based on the Btu content per cubic foot.

### JUST AND REASONABLE

The price in the letter agreement is the only just and reasonable price, North Michigan argues. Consumers could have protected itself with "regulatory out" or "market out" clauses. North Michigan asserts that Consumers got the advantage of millions of dollars of gas cost savings as a result of the settlement and then additional savings after being released from the settlement. North Michigan claims that it expanded its exploration and production in reliance on Consumers' initial commitments.

Energy Reserves argues that the price fails to take into consideration the fact that it obtained financing on the basis of price expectations in the settlement agreement.

Rates set by the commission are presumed to be lawful and reasonable. *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624; 209 NW2d 210 (1973). The party opposing the order must show by clear and convincing evidence that the order complained of is unlawful or unreasonable. MCL 462.26; MSA 22.45, *Federal Armored Service, Inc v Public Service Comm,* 204 Mich App

24, 27; 514 NW2d 178 (1994). The reviewing court gives due deference to the PSC's administrative expertise and will not substitute its judgment for that of the PSC. *Yankoviak v Public Service Comm*, 349 Mich 641, 648; 85 NW2d 75 (1957).

The standard of review of a PSC decision is whether it is lawful and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28.

> It is for the PSC to weigh conflicting opinion testimony of the qualified ("competent") experts to determine how the evidence preponderated. Expert opinion testimony is "substantial" if offered by a qualified expert who has a rational basis for his views, whether or not other experts disagree. [*Antrim Resources, supra* at 620.]

In this case, the PSC based its gas price determination partly on the expert testimony of Consumers witness Michael J. Shore and Attorney General witness Ralph E. Miller. Both agreed that the benchmark price should be $2.80 per MMBtu. Shore testified that the price should be set without additional add-ons, and Miller testified that the benchmark price should serve as the maximum price.

Viewed from a broader distance, however, the rate setting, the rate making, is virtually unreviewable, as we recently pointed out in *Abate v Public Service Comm*, 205 Mich App 383, 390; 522 NW2d 140 (1994):

> Setting rates and fashioning rate structures are legislative and not judicial or quasi-judicial acts. This Court therefore does not review PSC rate decisions under the substantial evidence test, but instead defers to the PSC absent breach of a constitutional standard or statutory mandate or limitation.

HERSEE APPEAL

Appellants Hersee and the Olsons raise several constitutional challenges to Act 9.

DUE PROCESS—STANDARDS

They argue that § 10 denies due process, because the electricity rate statute it refers to contains standards that are meaningless in a producer's sale of gas to a common purchaser. They point out that the "just and reasonable" provision of that statute uses a return-on-investment approach that is impossible to apply to a producer's sale of gas to a public utility. Recognizing that, the PSC substituted a market price standard, completely without statutory authority, contrary to *Union Carbide Corp v Public Service Comm*, 431 Mich 135; 428 NW2d 322 (1988). Consequently, appellants conclude, § 10 of Act 9 is devoid of standards, vague, and uncertain and denied them due process.

The argument is not meritorious. We rejected it in *Antrim Resources, supra.* There, we held that Act 9 incorporates the "just and reasonable" test from the electricity rate statute, 1909 PA 106, giving the PSC jurisdiction to approve natural gas prices between producers and utilities. The Court interpreted part of § 7 of the electricity rate act to read as follows when applied to gas sales:

> The prices [paid to producers of natural gas] shall be just and reasonable and no [producer of natural gas] shall at any time be [paid] more or less than other [producers of natural gas] are [paid] for like contemporaneous service rendered under similar circumstances and conditions. [179 Mich App 614.]

*Antrim Resources* pointed out that the PSC's

reliance on § 10 of Act 9 as a legislative grant of jurisdiction to approve prices was entitled to respectful consideration. The Court noted that the PSC long has looked to a variety of factors in setting a reasonable and appropriate price, including "the contract pricing provisions, the cost of interstate and intrastate natural gas, past PSC-approved gas purchase prices, the cost of alternative fuels and governmentally established gas prices." 179 Mich App 614. We noted that, despite a 1987 change in the statute, the Legislature had not amended the just and reasonable provision. This led to the conclusion that "the Legislature must have contemplated that the PSC would inspect and interpret the filed contracts to determine if the pricing provisions were reasonable and appropriate." *Id.*

In light of *Antrim Resources,* it is now too late for appellants to challenge the standards set out in 1929 PA 9 and the electricity rate statute by raising other objections to the lack of standards not specifically raised or considered in *Antrim Resources.*

### DUE PROCESS—POLICE POWER

The Hersee appellants further argue that Act 9 is not a valid exercise of police power, because there is no public welfare consideration that can justify the state's interference with contract prices negotiated by producers. They assert that the statute is one-sided and that it grants an advantage to a common purchaser to receive a reduction in contract price. They urge that the public interest can be protected by the PSC in rate cases by controlling the utility's gas cost recovery under 1982 PA 304. They claim that the public interest is not served by permitting a common purchaser to

escape from a contractual bargain with a producer.

It is true, as Hersee argues, that the entire cost of gas is not always passed on to ratepayers. In a general rate case or in a gas cost recovery proceeding, the PSC may disallow the cost of gas that was incurred unreasonably or imprudently. In that situation, the utility company's shareholders, not the ratepayers, bear the excess cost.

However, it is not true that the state lacks a legitimate interest in regulating gas costs. It seems axiomatic that the price a public utility pays for natural gas affects the public interest or welfare, because the utility passes on most of the cost of gas to ratepayers. Indeed, a state has significant and legitimate interests in protecting consumers from rising natural gas prices. *Energy Reserves Group, Inc v Kansas Power & Light Co,* 459 US 400, 416-417; 103 S Ct 697; 74 L Ed 2d 569 (1983). Hence, a gas supply contract between producers and a natural gas utility that contained a price escalation clause was held not to be in the public interest in a gas rate approval proceeding in *Nat'l Fuel Gas Distribution Corp v Public Service Comm,* 107 AD2d 357; 487 NYS2d 150 (1985); aff'd 66 NY2d 956; 498 NYS2d 798; 489 NE2d 767 (1985).

### EQUAL PROTECTION—ACCESS

Hersee and Energy Reserves argue that the statute denies producers equal protection. They claim that it grants common purchasers the right to seek a reduction in price, but does not give producers authority to seek a price increase. They point out that the remedy of "complaint" under § 7 of the electricity rate statute is open only to consumers, not to producers. They conclude that

vague references to access under other PSC statutes are inadequate; the producers' right to secure a contract price increase should be set forth clearly and without doubt.

We agree with the appellants that no PSC statute clearly gives a producer a right to petition the PSC for an increase in gas prices. However, a producer used Act 9 without question and apparently without objection in *Sullivan v Public Service Comm,* 93 Mich App 391; 287 NW2d 188 (1979). As Hersee notes, Act 9 gives a common purchaser, but not a producer, the right to seek a price reduction under § 10. MCL 483.110; MSA 22.1320. Similarly, § 7(1) of the electricity rate act, to which § 10 refers for procedures, limits the complaint remedy to any consumer, city, village, or township. MCL 460.557(1); MSA 22.157(1).

However, a producer has equal access to the PSC when a common purchaser applies for price approval under Act 9.

When a utility and a producer agree on a contract price, they are, by definition, satisfied with the price. Ordinarily, they would live with that price until it was renegotiated. However, § 10 of Act 9 requires the utility to file the new rate with the PSC. Approval by the PSC is mandatory. *Antrim Resources, supra.* The approval process necessarily includes a determination that the price is just and reasonable. MCL 483.110; MSA 22.1320; MCL 460.557; MSA 22.157; *Antrim Resources, supra.* "Just and reasonable" requires that the price be neither too high nor too low, neither exorbitant nor confiscatory. *ABATE v Public Service Comm,* 430 Mich 33, 40; 420 NW2d 81 (1988).

The determination must accommodate both a utility's request that the price be lowered and a producer's request that the price be increased. At that point, the producer, either as an interested

party or a party allowed to intervene, has as much access to the PSC to seek a price increase as the utility does for seeking a decrease. Rule 101 of the PSC rules of practice, 1992 AACS, R 460.17101, defines a party as a "person" who commences a proceeding or who is allowed to intervene. A "person" includes a corporation. R 460.17201 allows intervention by a person "who claims an interest in a proceeding." A producer is an interested "person" in price approval proceedings under Act 9.

Appellants also contend that they are entitled to seek a price increase at any time there is a change in circumstances, just as utilities can. We need not decide the question, because it is not involved in this case. Consumers sought price approval for the reason that Act 9 required it. We do not rule on whether it also can seek a reduction for changes in circumstances under Act 9 or other legislation. We decide only that, when a common purchaser seeks approval of a price change under Act 9, the producers affected by the action have an equal right to present evidence and argue for a price increase.

### IMPAIRMENT OF CONTRACT AND DELEGATION

North Michigan also argues that the PSC's price reduction impairs its contract with Consumers, contrary to constitutional protections.

The issue was rejected in *Antrim Resource,* *supra* at 616, 617.

North Michigan maintains that Act 9, as construed by the PSC, violates the separation of powers principle, because it is an unconstitutional delegation of legislative power to an administrative agency without sufficient standards.

The point is not meritorious. Act 9 and the electricity rate statute contain sufficient standards

to guide the PSC in approving a contract price, as we held in *Antrim Resources, supra* at 613-615.

The decision of the PSC is affirmed. Costs are not allowed, because the appeal raises questions of public interest and importance, including constitutional questions not considered before.