ENERGY RESERVES, INC v CONSUMERS POWER COMPANY

NORTH MICHIGAN LAND & OIL CORPORATION v CONSUMERS
POWER COMPANY

Docket Nos. 188362, 188769. Submitted December 11, 1996, at Grand
Rapids. Decided January 24, 1997, at 9:00 A.M.

Energy Reserves, Inc., brought an action in the Grand Traverse Cir-
cuit Court against Consumers Power Company, alleging claims aris-
ing from a gas purchase contract (letter agreement) between the
parties. The plaintiff claimed that Consumers breached the duty to
pay the price set forth in the contract and breached the duty of
good faith and fair dealing imposed by the Uniform Commercial
Code (UCC) when it failed to file a copy of the letter agreement with
the Michigan Public Service Commission (PSC) as required by stat-
ute. The plaintiff also claimed that it was entitled to damages under
the theory of promissory estoppel. The trial court, Philip E. Rod-
gers, Jr., J., granted summary disposition for the defendant pursu-
ant to MCR 2.116(C)(7), finding that all the claims had been
resolved by the Court of Appeals in a prior litigation between the
parties. *North Michigan Land & Oil Corp v Public Service Comm*,
211 Mich App 424 (1995). The plaintiff appealed (Docket No.
188362).

North Michigan Land & Oil Corporation and others (North Michigan)
brought an action in the Jackson Circuit Court against Consumers
Power Company, alleging claims arising from the same letter agree-
ment involved in Docket No. 188362. The plaintiffs, who were also
appellants in the prior *North Michigan* action, also alleged that the
defendant breached the duty to pay the price set forth in the con-
tract and breached the duty of good faith and fair dealing imposed
by the UCC when it failed to file a copy of the letter agreement with
the PSC as required by statute. The plaintiffs also included claims of
equitable estoppel and that the PSC's action violated the constitu-
tional requirement of separation of powers. The trial court, Chad C.
Schmucker, J., granted summary disposition for the defendant pur-
suant to MCR 2.116(C)(10). The plaintiffs appealed (Docket No.
188769). The appeals were consolidated.

The Court of Appeals *held*:

Summary disposition was properly granted in both cases, but, in Docket No. 188769 it was more appropriately granted pursuant to MCR 2.116(C)(7) because the plaintiffs' claims were barred by res judicata. The plaintiffs' claims with regard to the letter agreement were resolved, either expressly or by implication, by the Court in *Northern Michigan, supra*, where the Court affirmed the PSC's determination that the letter agreement never became effective because it was not filed with or approved by the PSC.

1. The trial courts properly dismissed all the plaintiffs' claims regarding matters that were or could have been decided in *North Michigan, supra.*

2. North Michigan's argument regarding a lack of consideration for a settlement agreement between the parties was properly decided for the defendant. The trial court in Docket No. 188362 properly denied Energy Reserves' motion to amend its complaint to include the same claim because such amendment would have been futile. The fact that the PSC did not approve the prices in the letter agreement does not mean that there was a failure of consideration for the settlement agreement because the plaintiffs are charged with knowledge that the prices are unenforceable until approved by the PSC. The plaintiffs' claim that only the defendant assumed the risk that the PSC would not approve the prices in the letter agreement is without merit and is also barred by res judicata because it could have been brought in the prior proceeding.

3. The trial court did not err in awarding the defendant attorney fees in connection with Energy Reserves' motion for reconsideration.

4. Significant sanctions are warranted because of the plaintiffs' totally unjustified pattern of relitigating previously rejected claims. The matter must be affirmed and remanded for a determination of reasonable costs and attorney fees in favor of the defendant.

Affirmed and remanded.

ACTIONS — RES JUDICATA.

The doctrine of res judicata bars a subsequent action between the same parties where the evidence or essential facts remain the same; for the doctrine to apply, the prior action must have been decided on the merits, the issues in the subsequent action must have been or could have been resolved in the prior action, and both actions must involve the same parties or their privies.

*Jerome Colligan*, for Energy Reserves, Inc.

*Byron P. Gallagher*, for Idonea Hersee and others.

*J. Andrew Domagalski* and *Jeffrey D. Van Leuwen,* for North Michigan Land & Oil Corporation and others.

*Michael G. Wilson,* for Consumers Power Company.

Before: HOOD, P.J., and NEFF and M. A. CHRZANOWSKI*, JJ.

PER CURIAM. In these consolidated appeals, plaintiffs brought separate actions against defendant for claims arising from a gas purchase contract (letter agreement) between the parties. Plaintiffs claimed that defendant breached the duty to pay the price as set forth in the contract and breached the duty of good faith and fair dealing imposed by the Uniform Commercial Code (UCC) when it failed to file a copy of the letter agreement with the Michigan Public Service Commission (PSC) as required by statute. Plaintiff Energy Reserves, Inc., also claimed that it was entitled to damages under the theory of promissory estoppel. The remaining plaintiffs (collectively referred to as North Michigan) included claims of equitable estoppel and that the PSC's action violated the constitutional requirement of separation of powers. The trial court in Docket No. 188362 granted defendant's motion for summary disposition against Energy Reserves pursuant to MCR 2.116(C)(7), on the basis of a finding that all Energy Reserves' claims had been resolved in prior litigation between the parties. In Docket No. 188769, defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) was granted against North Michigan. Plaintiffs appeal as of right. We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

These cases are the latest round in a legal battle that has spanned nearly ten years and has been addressed by this Court, the federal district court, and the Sixth Circuit Court of Appeals.[1] The factual background was set forth by this Court in *North Michigan Land & Oil Corp v Public Service Comm*, 211 Mich App 424, 427-430; 536 NW2d 259 (1995):

> Under a July 1, 1977, gas purchase contract, Amoco Production Company agreed to sell to Consumers gas produced in Manistee, Benzie, Wexford, Grand Traverse, Kalkaska, Antrim, Crawford, Otsego, and Montmorency Counties. Appellants are Amoco's successors in interest. The contract was to remain in effect until at least November 1, 1991, and from year to year thereafter, subject to cancellation by either party.
>
> The contract stated that, for periods after June 30, 1978, gas was priced at the lower of a base price and an alternate price. The base price was $1.995 per thousand cubic feet (Mcf) as of July 1, 1978, and escalated by five percent every six months. The alternate price was the reported market price for No. 2 fuel oil.
>
> In Case No. U-8287, Consumers' 1986 gas cost recovery plan, the PSC held in a January 27, 1987, order that the intrastate component of Consumers' gas supply was too costly. That prompted Consumers to seek renegotiation of its intrastate gas purchase contracts, including the 1977 contract.
>
> Eventually, a settlement was reached. Consumers, numerous producers, and other parties entered into a comprehensive settlement agreement, which was approved by the PSC on August 29, 1989, setting ceiling prices for Consumers' purchases of natural gas at $3.050/per Mcf for 1989,

---

[1] *North Michigan Land & Oil Corp v Consumers Power Co*, unpublished opinion of the United States District Court for the Western District of Michigan, entered April 8, 1993 (File No. 4:92:CV:99), aff'd unpublished opinion per curiam of the United States Sixth Circuit Court of Appeals, entered August 26, 1994 (File Nos. 93-1705, 93-1775).

$3.924/per Mcf for 1990, and $3.558/per Mcf until November 1991.

In the meantime, Consumers and appellants entered into a separate letter agreement, dated August 7, 1989, which extended the original term of the 1977 gas contract from November 1, 1991, to November 1, 1995, among other things. This agreement superseded a previous agreement between the parties executed on January 1, 1988. That agreement had also provided for an extension of the original ceiling prices in 1989, 1990, and 1991 identical to those set forth in the U-8287 settlement agreement. However, it further provided for a return to the price formula of the original contract after December 1, 1991.

The existence of the private agreement between Consumers and the individual producers was recognized in the August 29, 1989, settlement agreement approved by the PSC in Case No. U2-08287. The recognition took the form of a prohibition of recovery from ratepayers of any extra expense incurred due to variation from the terms of the settlement agreement and the letter agreement. However, neither the parties' August 7, 1989, individual agreement nor their previous agreement of January 1, 1988, was submitted to or approved by the PSC.

On November 27, 1991, a few days before the expiration of the period covered by the PSC-approved settlement agreement in Case No. U-8287, Consumers commenced the instant proceeding with the PSC.

Consumers' application, filed pursuant to 1929 PA 9, MCL 483.101 et seq.; MSA 22.1311 et seq., sought approval of a proposed price reduction and other modifications of its natural gas contracts with producers. Specifically, Consumers sought approval of a price of $2.80 per million British thermal units (MMBtu) as a just and reasonable price for purchases from December 1, 1991, to March 31, 1993. Also, it sought relief from contractual purchase obligations that had become uneconomical. It sought, also, a determination that gas it was obliged to purchase be recovered as part of its gas-cost recovery, pursuant to 1982 PA 304, MCL 460.6h et seq.; MSA 22.13(6h) et seq.

On February 8, 1993, the PSC issued a fifty-one-page opinion and order, reducing the contract price to $2.80 per MMBtu, inclusive of "add-on" charges, among other things. The PSC also held that the original November 1, 1991, cancellation date under the 1977 contract was still in effect. Thus, any party could exercise the right of cancellation on the next anniversary cancellation date, November 1, 1993, or November 1 of any subsequent year. The PSC rejected appellants' reliance upon their August 7, 1989, private agreement with Consumers. The agreement purported to extend the term of the contract until November 1, 1995. It also rejected appellants' argument that this amendment of the original contract had been approved when the PSC approved the settlement agreement in Case No. U-8287. The PSC found that because the amendment had never been approved by it, it was legally ineffective.

In that case, this Court affirmed the PSC's determination that the letter agreement upon which the present plaintiffs have brought their actions "never became effective, because it was not filed with or approved by the PSC." *Id.* at 435. Now, plaintiffs are again bringing actions regarding the letter agreement, claiming essentially that their contractual rights remain enforceable, independent of any determination by the PSC with regard to price. We conclude that summary disposition was properly granted in both cases, but in Docket No. 188769 it was more appropriately granted pursuant to MCR 2.116(C)(7) because plaintiffs' claims were barred by res judicata.

A subsequent suit between the same parties when the evidence or essential facts remain the same is barred by the doctrine of res judicata. *Eaton Co Bd of Co Rd Comm'rs v Schultz*, 205 Mich App 371, 375; 521 NW2d 847 (1994). For the doctrine to apply (1) the former suit must have been decided on the merits, (2) the issues in the second action were or could have

been resolved in the former one, and (3) both actions must involve the same parties or their privies. *Id.* The applicability of res judicata is a question of law, which we review de novo. *Husted v Auto-Owners Ins Co*, 213 Mich App 547, 555; 540 NW2d 743 (1995). The grant or denial of a motion for summary disposition is reviewed under the same standard. *Borman v State Farm Fire & Casualty Co*, 198 Mich App 675, 678; 499 NW2d 419 (1993), aff'd 446 Mich 482; 521 NW2d 266 (1994). An order granting summary disposition under the wrong subrule may be reviewed under the correct one. *Ginther v Zimmerman*, 195 Mich App 647, 649; 491 NW2d 282 (1992). Plaintiffs contend that various factual issues remain unresolved. Virtually all these issues relate to defendant's failure to file the letter agreement and whether plaintiffs were entitled to rely on the provisions of that agreement. As the trial courts properly concluded, plaintiffs' claims with regard to the letter agreement were resolved, either expressly or by implication, by this Court in *North Michigan, supra.* Consequently, summary disposition pursuant to MCR 2.116(C)(7) was appropriate in both cases.

Plaintiffs first claim that the PSC lacked jurisdiction to hear breach of contract claims. This Court has repeatedly held that the PSC has primary jurisdiction over the interpretation of gas purchase contracts. *Miller Bros v Public Service Comm*, 180 Mich App 227, 233; 446 NW2d 640 (1989); *Antrim Resources v Public Service Comm*, 179 Mich App 603, 611; 446 NW2d 515 (1989). Moreover, this Court expressly considered and rejected North Michigan's arguments regarding the PSC's authority to resolve contractual claims in *North Michigan, supra* at 437. Thus, plain-

tiffs' claim that the PSC lacked jurisdiction is barred by res judicata. See *Gose v Monroe Auto Equipment Co*, 409 Mich 147, 160; 294 NW2d 165 (1980); *Howell v Vito's Trucking & Excavating Co*, 386 Mich 37, 42; 191 NW2d 313 (1971); *Schultz, supra* at 375-376.

Because the PSC had jurisdiction to interpret the terms of the contract, plaintiffs' breach of contract claims arising out of the letter agreement, if any, were resolved by this Court's affirmation of the PSC's determination that the letter agreement was invalid. *North Michigan, supra* at 435. Plaintiffs are precluded on the basis of collateral estoppel from attempting to relitigate the validity of the letter agreement because that identical issue was actually litigated in the prior action between these same parties and was essential to the judgment. *Schultz, supra* at 376-377. Moreover, plaintiffs' breach of contract claims arising out of the letter agreement, if any, are barred by res judicata because they could have been brought in the prior proceeding. *Gose, supra* at 160; *Schultz, supra* at 375-376. Plaintiffs were "obligated to advance in a single proceeding every alternative basis" for recovery, and their "[f]ailure to do so bars relitigation of the claim." *Gose, supra* at 163.

Plaintiffs next claim that the trial courts erred in dismissing their claim that Consumers breached the implied covenant of good faith and fair dealing under either the common law or the UCC by failing to file the letter agreement with the PSC. We disagree. It was not error for the trial court to dismiss a claim that could have been raised in the prior action involving the same facts and parties because such claims are barred by res judicata. *Gose, supra* at 160-163; *Schultz, supra* at 375-376.

Plaintiffs also assert that the trial courts erred in concluding that plaintiffs could not recover against Consumers for breach of its statutorily imposed duty to file the letter agreement with the PSC. This claim is barred by res judicata because it was expressly and fully litigated in the prior action, in which this Court set forth in its opinion a separate subsection entitled "Consumers' Failure to File" and rejected plaintiffs' arguments that Consumers' failure to fulfill the statutory filing requirement somehow entitled plaintiffs to damages. *North Michigan, supra* at 436; *Gose, supra* at 160-163; *Schultz, supra* at 375-376.

Energy Reserves argues that res judicata does not bar its breach of contract claims arising out of Consumers' November 1993 termination of its contractual relationship with Energy Reserves because those claims could not have been brought in the prior proceeding. However, in *North Michigan*, this Court expressly upheld the PSC's determination that "the termination date of the 1977 contract remained in effect" despite the existence of the letter agreement. *North Michigan, supra* at 435. The 1977 contract provided that either party could terminate the agreement on November 1 of any year upon three months' notice. *Id.* As this Court noted, "[a]t the time of the PSC's decision, the earliest available cancellation date would have been November 1, 1993." *Id.* Thus, this Court affirmed the PSC's determination that the contract could legally be terminated on the date that it was, in fact, terminated. Consequently, because the issue whether Consumers could legitimately terminate its contractual relationship with Energy Reserves on the date that it did was actually litigated in the prior action between the same parties and was essen-

tial to the determination, Energy Reserves is barred by collateral estoppel from arguing that Consumers' termination on that date constituted a breach. *Schultz, supra* at 376-377.

North Michigan also argues that the trial court erred in determining that the PSC decision affirmed by this Court in *North Michigan, supra,* did not violate constitutional protections against impairment of contract and the requirement of separation of powers. These arguments were expressly considered and rejected by this Court in *North Michigan, supra,* in which this Court directly addressed North Michigan's claim "that the PSC improperly exercised judicial power when it ruled regarding the validity of the letter agreement and declared the rights of the parties." *Id.* at 437. Consequently, relitigation of this claim is barred by res judicata. *Gose, supra* at 160; *Schultz, supra* at 375-376.

Energy Reserves also argues that the trial court erred in dismissing its promissory estoppel claim, contending that it was entitled to rely on the prices as set forth in the letter agreement. Because this claim was expressly set forth and rejected by this Court in *North Michigan, supra* at 436, it is barred by res judicata. *Howell, supra* at 42; *Schultz, supra* at 375-376. This Court stated specifically that Energy Reserves could not rely on equitable considerations to obtain approval of price increases that were not revealed to the PSC. *North Michigan, supra* at 436-437.

Similarly, North Michigan's equitable estoppel claim is barred because this Court determined in the prior litigation that "the producers could not have relied on the prices set in the letter agreement." *North Michigan, supra* at 437. In the absence of justifiable reli-

ance, North Michigan cannot fulfill the elements of equitable estoppel, even if equitable estoppel could form the basis for a cause of action. See *Soltis v First of America Bank-Muskegon*, 203 Mich App 435, 444; 513 NW2d 148 (1994). Moreover, this claim is barred by res judicata because it could have been brought in the prior action. *Gose, supra* at 160-163.

North Michigan also argues that this Court's finding in *North Michigan, supra* at 435, that the letter agreement was invalid rendered the settlement agreement void for failure of consideration because Consumers' acceptance of the letter agreement provided the consideration for North Michigan's acceptance of the settlement agreement. We agree with the trial court's assessment of this issue. That the PSC did not approve the prices in the letter agreement does not mean that there was a failure of consideration where North Michigan is charged with the knowledge that the prices are unenforceable until approved by the PSC. See *North Michigan, supra* at 434; *Antrim, supra* at 612. Moreover, the settlement agreement contained no provision conditioning its validity on the enforceability of private letter agreements. For this reason, we also find that the trial court did not abuse its discretion when it denied Energy Reserves' motion to amend its complaint to include this claim because such amendment would have been futile. See *Gonyea v Motor Parts Federal Credit Union*, 192 Mich App 74, 78; 480 NW2d 297 (1991).

Moreover, we note that the cases cited as authority by plaintiffs did not involve gas purchase contracts subject to 1929 PA 9, MCL 483.101 *et seq.*; MSA 22.1311 *et seq.* This Court has repeatedly stated that " 'producers who enter into contracts with common

purchasers are charged with the knowledge that they are subject to the jurisdiction of the PSC to the extent that the pricing provisions in their contracts . . . are subject to PSC approval.' " *North Michigan, supra* at 434, quoting *Antrim, supra* at 612. In such situations, both parties are presumed to be aware that prices in a gas purchase contract may not be relied on until the PSC approves them. *North Michigan, supra* at 437. "The purchase price is simply not a matter of private contract." *Id.* at 432. Thus, plaintiffs' claim that only Consumers assumed the risk that the PSC would not approve the prices in the letter agreement is without merit and is also barred by res judicata because it could have been brought in the prior proceeding. *Gose, supra* at 160-163; *Schultz, supra* at 375-376.

Finally, Energy Reserves claims that the trial court erred in awarding attorney fees to Consumers in connection with Energy Reserves' motion for reconsideration. We disagree. A trial court's grant of attorney fees because an action is frivolous is reviewed for clear error. *Attorney General ex rel Director of Dep't of Natural Resources v Acme Disposal Co*, 189 Mich App 722, 728; 473 NW2d 824 (1991). Here, the trial court specifically found that all the claims presented in the complaint were barred by res judicata because they had been decided, either expressly or by implication, in the prior litigation. Energy Reserves made no attempt in its motion to demonstrate why res judicata should not also apply as a bar to the new arguments it sought to raise in its amended complaint. Consequently, the award was warranted and the trial court's decision was not clearly erroneous.

In addition, we find significant sanctions are warranted because of plaintiffs' totally unjustified pattern

of relitigation of previously rejected claims. Therefore, we award Consumers its attorney fees incurred in connection with the instant appeals pursuant to MCR 7.216(C)(1) and (2). First, we note that Energy Resources failed to even mention *Antrim Resources* or *Miller Bros* in its briefs, and although North Michigan mentioned these cases it made no meaningful attempt to discuss or distinguish their applicability to the instant matter. We find that by failing to do so, plaintiffs "grossly disregarded the requirements of a fair presentation of the issues to the court." MCR 7.216(C)(1)(b). Additionally, the issues in the instant appeals are indistinguishable from those raised in the prior litigation, as illustrated by the fact that virtually all of them may be disposed of by reference to this Court's opinion in *North Michigan*. After presenting their case to this Court, the federal district court, and the Sixth Circuit Court of Appeals, plaintiffs should be cognizant of the relevant law.

Affirmed, but remanded for a determination of reasonable costs and attorney fees. We do not retain jurisdiction.