### WILLIAM PATON v. HENRY LANGLEY ET AL.

*Creditor's bill—Parties—Construction of deed—Title.*

Where the intent of a deed is so far carried out, by operative provisions, as to secure to beneficiaries the interests designed for them, the grantors need not be made parties to a creditor's bill to set aside subsequent conveyances.

A deed contained a preamble reciting that the grantors desired to make provision for the heirs, issue, and legal representatives of William Paton and Elizabeth, his wife; and that said beneficiaries should enjoy the proceeds, rent, income and profits of the real estate therein described during the term of their natural lives. The grant itself was to Elizabeth Paton "her successor and assigns for ever, in trust to and for the several uses, interests and purposes hereinafter mentioned" which were (1) to lease the property and keep it in repair from the proceeds ; (2) to use for herself during her life, but if she became a widow and re-married she was to hold the property for the sole use of all the heirs of William Paton, living at the time of his death, and should convey to them in their due proportions as soon as they desired after coming of age; and finally, if her husband survived her

he was to succeed to her trust. *Held* that the deed disposed entirely and absolutely of the entire beneficial interest in the estate; that Elizabeth Paton held the position of a trustee who would represent the estate to the exclusion of the grantors; and that in a suit to avoid the title for the fraud of William Paton in conveying the property in fraud of creditors, it was sufficient to make William and Elizabeth Paton, and the presumptive heirs then existing, defendants to the bill, without also bringing in the grantors.

Provision in a deed for the "heirs" of a person includes an estate of inheritance.

Under Comp. L. § 4091 which permits the creation of freehold estates to begin at a future day, a contingent remainder is not too remote which depends on the death of the husband of the grantee of the life estate and on her own re-marriage or death, as theirs are lives in being. Comp. L. § 4082.

Appeal from Wayne. (Chambers, J.) Apr. 17.—Apr. 25.

BILL to define interests and for partition. Defendant Langley appeals. Reversed. Bill dismissed.

*Charles F. Burton* and *Alfred Russell* for complainant.

*Walker & Walker* and *C. A. Kent* for defendant appellant. At common law the word "heirs" is essential to the conveyance of an estate in fee: 4 Kent's Com. §§ 6, 8; 1 Washb. R. P. 56; a testamentary trustee will take an estate commensurate with the purpose of the trust, whether the limitation in the instrument is to him and his heirs or not: 1 Perry on Trusts § 315; the intent to give a fee would be inferred from the fact that a fee might be necessary to effectuate the trust: *Wilcox v. Wheeler* 47 N. H. 491; *Gibson v. Montford* 1 Ves. Sr. 485; the form of a conveyance is immaterial if it is plain that it is for the interest of the parties to pass the estate and if it can be done legally: *Hayes v. Kershow* 1 Sandf. Ch. 258; *Bridge v. Wellington* 1 Mass. 219; *Higgins v. Wasgatt* 34 Me. 305; *Bryan v. Bradley* 16 Conn. 474; and if it be clear that it was the grantor's intention to convey the fee, the deed will be so construed even though the words of inheritance be omitted in the habendum clause: *Budd v. Brooke* 3 Gill 235; *Farquharson v. Eichelberger* 15 Md. 72; *Saunders v. Hanes* 44

N.Y. 359 ; *Merritt v. Disney* 48 Md. 351 ; whenever a trust is created, a legal estate sufficient for the purposes thereof shall, if possible, be implied in the trustee whether the limitation is to him and his heirs or not : 1 Perry on Trusts §§ 312, 320 ; *Neilson v. Lagow* 12 How. 98 ; *Newhall v. Wheeler* 7 Mass. 189 ; *Welch v. Allen* 21 Wend. 147 ; *Chamberlain v. Thompson* 10 Conn. 243 ; *Angell v. Rosenbury* 12 Mich. 241 ; *Spessard v. Rohrer* 9 Gill 261 ; *Farquharson v. Eichelberger* 15 Md. 72 ; *Randolph v. N. J. W. L. R. R.* 28 N. J. Eq. 49 ; *Stearns v. Palmer* 10 Met. 32 ; *Wilcox v. Wheeler* 47 N. H. 488 ; *King v. Parker* 9 Cush. 71 ; *Thatcher v. St. Andrew's Church* 37 Mich. 271 ; *Brooks v. Jones* 11 Met. 191 ; *Cleveland v. Hallett* 6 Cush. 406 ; *Gould v. Lamb* 11 Met. 84 ; *Booth v. Field* 2 B. & Ad. 564 ; *Shelley v. Eldin* 4 Ad. & El. 582 ; *Rees v. Williams* 2 M. & W. 749 ; any agreement in writing, whereby a person having disposal over property, agrees that a particular piece shall be dealt with in a particular manner for the benefit of another, raises a trust in favor of the latter against the party agreeing or any other person claiming under him, voluntarily or with notice : 1 Perry on Trusts § 82 ; *Fisher v. Fields* 10 Johns. 505 ; a trustee cannot vary the terms of the trust, nor declare a new trust to the prejudice of the cestui que trust, without his consent : 1 Perry on Trusts § 86 ; *Hunnewell v. Lane* 11 Met. 163 ; one who voluntarily takes a conveyance of land without consideration or with notice takes it subject to the trusts with which it stood charged in the grantor's hands : *Lyford v. Thurston* 16 N. H. 399.

CAMPBELL, J. This bill was filed by complainant as heir at law of William Paton, junior, who was a son of William Paton, senior, a former owner of the property in question, which is land in Detroit. Defendant Langley, who appeals, claims under a receiver's sale in a suit wherein a conveyance made by William McHutcheon and wife in favor of the wife and children of William Paton, senior, and his deed to the McHutcheons was declared void as against creditors. All the parties named as beneficiaries in the deed from Mr. and Mrs. McHutcheon were made parties and bound by

the decree.   The McHutcheons were not made parties, and complainant claims that the deed made by them was inoperative to pass more than a bare life estate to William Paton, senior's wife.   Before her death a second deed was made by the McHutcheons, under which complainant now claims title to a part of the premises.   Langley's title is not disputed as to certain shares assigned to him, but it is claimed the receiver's title is void.

The only controversy, therefore, is whether by their deed dated August 17, 1859, the McHutcheons passed the entire estate at law or in equity, or whether they retained the reversion.

The deed is not artificially drawn, and requires some attention to interpret it.   There is no difficulty in ascertaining the purpose for which it was made.   The only question open to discussion is whether this intent was so far carried out by operative provisions as to secure to the beneficiaries the interests designed for them.   If so, then, under our statutes the failure to make the grantors parties to the creditor's bill would work no harm, and would not invalidate the decree.

The deed, in the first clause, is stated to be between the grantors of the first part and Elizabeth Paton of the second part.   Then follows a preamble reciting that the grantors desired to make provision "for the heirs and issue and legal representatives of William Paton and Elizabeth Paton, his wife," "against future contingencies, and for their welfare, maintenance, support and pecuniary condition;" with a further preamble that the grantors were desirous that the said legal representatives, heirs and issue "shall, as hereinafter excepted, enjoy the proceeds, rents, income and profits of the real estate hereinafter more particularly described, during the term of their natural lives, free from the control, liabilities or interference of any person or persons."

Then comes the grant in ordinary form to the party of the second part to have and to hold, "unto the said Elizabeth Paton, her successors and assigns, forever, in trust to and for the several uses, interests and purposes hereinafter

mentioned." These were—*First,* to lease the property and from the income to keep it in repair and pay insurance, taxes, etc. *Second,* for her own use during her husband's life, and during her widowhood if surviving him. In case of her remarriage she was to hold the property for the sole use, etc., of "all the heirs of said William Paton, living and having existence at the time of said William Paton's death, and shall convey, transfer and assign, by good and sufficient deed of conveyance and transfer, in proportion as each of said heirs, and pro rata as each of his said heirs or their representatives shall be entitled at the time, as soon as each may desire at the time of their coming of age." *Third,* in case William Paton should survive his wife he "shall be, and is hereby, authorized to be empowered and appointed to act as trustee in her place and stead, and in behalf of the before-mentioned cestui que trust, hereby fully restricted by and to carry out, as well as she might or could do, as if personally present and alive, all of said trusts and for the said purposes," etc.

The bill after setting this out states that it was the intention of the McHutcheons to convey the fee to the children of William Paton, subject to the life estate of Mrs. Paton, and they had supposed such to be the effect of the deed ; and that in 1880 they made a new conveyance in fee directly to the surviving children and the issue of those who were deceased, setting forth their names in full. This deed sets out that it was the intention of the former one to convey the estate in fee-simple after the expiration of the valid trust, but that by a mistake in drafting the deed it was ineffective.

This last deed was made several years after the death of William Paton, senior, but about two years before the death of Elizabeth Paton.

That Elizabeth Paton took a valid interest in her own behalf is not questioned. That a provision for the "heirs" of a person includes an estate of inheritance is equally clear.

By section 4091 of the Compiled Laws it is declared that "subject to the rules established in the preceding sections

of this chapter, a freehold estate as well as a chattel real may be created to commence at a future day." There is nothing in any of those sections to interfere with the purposes of these deeds in favor of the heirs of William Paton ; and neither the death of himself, nor the death or marriage of his wife, would be events which could not be connected with the vesting of the remainder in fee. He and his wife being both lives in being, the contingency was not too remote.

The first deed contained, then, a distinct direction that the children surviving William Paton should take in fee, subject to the estate of Mrs. Paton. Mrs. Paton is in terms made a trustee to convey to them, if her interest should end during her life, which was a possible contingency.

By section 4137 it is provided that upon the death of the surviving trustee of an express trust, the trust shall not descend to his heirs nor pass to his personal representatives; but the trust, if then unexecuted, shall vest in the court of chancery, with all the powers and duties of the original trustees, and shall be executed by some person to be appointed for that purpose, under the direction of the court.

It appears to us that the deed first made disposed entirely and absolutely of the entire beneficial interest in the estate, and that Mrs. Paton occupied the position of a trustee who would represent the estate to the exclusion of the grantors, no further act from whom would be requisite to finally secure the remainder to the heirs. If she died without executing it, then the trust would devolve on the court of chancery, and this the deed distinctly recognizes and provides for, by pointing out William Paton as a proper successor. We do not think that any interest, legal or equitable, remained in the grantors which made them necessary parties to a suit to avoid the title for the fraud of William Paton, or which would have enabled them, by release or otherwise, to avoid such a suit by submitting to the charges made. When William and Elizabeth Paton were made defendants, with all the presumptive heirs then existing,

(and none were born thereafter,) we think the parties were sufficient to authorize the suit to be disposed of.

We think, therefore, that the decree setting aside the deed from Paton to the McHutcheons, and from the latter to Mrs. Paton, was operative, and that Langley's title under the decree must prevail.

The demurrer should have been sustained, and the bill dismissed. The decree below must be reversed, and the bill dismissed, with costs of both courts.

The other Justices concurred.