*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NATHAN ALEXANDER HAMOOD,

       Plaintiff-Appellee,

v

ZENMUSE, LLC,

       Defendant-Appellant.

UNPUBLISHED
September 24, 2020

No. 347834; 348138
Wayne Circuit Court
LC No. 17-013904-CZ

---

ZENMUSE, LLC,

       Plaintiff-Appellant,

v

JAMAL JOHN HAMOOD,

       Defendant-Appellee.

No. 348410
Wayne Circuit Court
LC No. 19-001530-CZ

---

Before: LETICA, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

These appeals are the product of a contentious dispute between Nathan Alexander Hamood, Jamal John Hamood, Anita Baker, and ZenMuse LLC (ZenMuse), a limited liability company that was created by Baker, who is its president and sole shareholder. In Docket No. 347834, ZenMuse appeals by leave granted, *Hamood v ZenMuse LLC*, unpublished order of the Court of Appeals, entered June 20, 2019 (Docket No. 347834), a January 14, 2019 order denying its motion to set aside a default judgment previously entered against it and in favor of Nathan. In Docket No. 348138, ZenMuse appeals by right a March 1, 2019 order setting up an escrow account for this case, requiring ZenMuse to deposit $219,892.70 into that account, requiring that those funds remain in that account pending the completion of the appellate proceedings in this matter and further direction by the court, providing that the property would be removed from receivership and immediately returned to ZenMuse if the funds were properly deposited, and denying ZenMuse's

-1-

motion to disqualify Jamal, Nathan's uncle, as Nathan's counsel. Finally, in Docket No. 348410, ZenMuse appeals by right an order granting summary disposition in favor of Jamal in an independent cause of action in which ZenMuse sought to set aside the default judgment entered against it in favor of Nathan in the prior case. We reverse the order denying ZenMuse's motion to set aside the default judgment, reverse the trial court's decision denying ZenMuse's motion to disqualify Jamal as Nathan's counsel, affirm the trial court's dismissal of the independent cause of action, and remand this matter for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

In 2014, MGM Restoration provided water-remediation services to Baker. MGM Restoration filed a lawsuit against Baker to recover for the services provided, and Jamal represented Baker in that lawsuit. MGM Restoration's claim was eventually dismissed, and later, MGM assigned the claim to Nathan. Meanwhile, Jamal filed an attorney-fee lawsuit against Baker.

On April 1, 2015, Baker created ZenMuse. On January 28, 2016, Baker conveyed a property with an estimated value if $1.5 million (the Dodge Place property) to ZenMuse for zero consideration. Baker then executed an application on ZenMuse's behalf to conduct business in Michigan. She filed the application on February 2, 2016. On August 31, 2016, however, she executed an application on ZenMuse's behalf to withdraw its authority to conduct business in Michigan.

On September 20, 2016, a $40,000 judgment was entered in favor of Jamal, reflecting a settlement in Jamal's attorney-fee lawsuit against Baker relative to the MGM Restoration matter. On September 27, 2016, Baker filed the application to withdraw the authority to conduct business on ZenMuse's behalf with the State of Michigan. On January 23, 2017, Jamal filed a lawsuit against ZenMuse, not Baker, seeking recovery against it based on the settlement reached between him and Baker in the attorney-fee matter. On June 27, 2017, a default judgment was entered in Jamal's favor against ZenMuse. Then, on July 27, 2017, a judgment for $200,595 was entered in favor of Jamal and against ZenMuse.

On September 19, 2017, Nathan filed a lawsuit against ZenMuse. One count was for a "fraudulent transfer" under the Michigan Uniform Fraudulent Transfer Act (MUFTA), MCL 566.31 *et seq*. Nathan asserted that the transfer of the Dodge Place property was fraudulent since he had an outstanding claim against Baker for "services rendered" that she knew about. Nathan asked the trial court to "enter a Judgment permitting Plaintiff an attachment against the property at issue . . . ." Nathan also alleged an "aiding in the concealment" count, asserting that ZenMuse, "knowing that the Property at issue was subject to execution or levy to satisfy one or more of the pending or outstanding claims against Anita Baker, actively assisted Anita Baker to conceal the Property by converting title to said Property to the name of the Defendant herein." Relying on the authorization of treble damages and attorney fees contained in MCL 600.2919(a) for cases involving "stolen, embezzled, or converted" property, Nathan sought $123,648.00 ($41,216.00 x 3) in damages as well as $41,366.00 in attorney fees for a total of $165,014.00.

On November 1, 2017, the trial court clerk's office entered a default against ZenMuse in Nathan's lawsuit. On November 15, 2017, Nathan filed a motion for entry of judgment in the

amount of $165,014. On December 14, 2017, the trial court entered the default judgment. Shortly thereafter, the judgment from Jamal's attorney-fee case was assigned to Nathan.

The judgment was not satisfied and a receiver was appointed. In the spring of 2018, the receiver served Baker with a document via first-class mail, suggesting that Baker was aware of this lawsuit. Baker did not act on that awareness, and claims that she only later became aware of the lawsuit in the fall of 2018. On December 13, 2018, ZenMuse appeared in this case for the first time and filed a motion to set aside the $165,014 default judgment. The trial court entered an order denying this motion, which is the order appealed in Docket No. 347834. Moreover, on March 1, 2019, the trial court issued an order denying ZenMuse's motion to disqualify Jamal as Nathan's counsel, which is the order appealed in Docket No. 348138.

Meanwhile, on February 1, 2019, ZenMuse filed the independent action against Jamal, seeking to set aside the default judgment entered by the trial court in Nathan's lawsuit. On March 20, 2019, the trial court granted Jamal's motion for summary disposition. This is the order appealed in Docket No. 348410

## II. ZENMUSE'S MOTION TO SET ASIDE THE DEFAULT JUDGMENT

ZenMuse first argues that the trial court erred in failing to set aside the $165,014 default judgment. We agree.

In Michigan, courts prefer to resolve lawsuits "on their merits." *Rogers v JB Hunt Transp, Inc*, 466 Mich 645, 654; 649 NW2d 23 (2002). It is "[f]or this reason" that "defaults and default judgments are not favored in the law." *Id*. Under Michigan law, "a trial court may grant relief from a judgment if the defendant was not personally notified of an action pending against the defendant and several additional requirements are satisfied." *Lawrence M Clarke, Inc v Richco Constr, Inc*, 489 Mich 265, 272; 803 NW2d 151 (2011). Specifically, MCR 2.612(B) provides as follows:

> A defendant over whom personal jurisdiction was necessary and acquired, but who did not in fact have knowledge of the pendency of the action, may enter an appearance within 1 year after final judgment, and if the defendant shows reason justifying relief from the judgment and innocent third persons will not be prejudiced, the court may relieve the defendant from the judgment, order, or proceedings for which personal jurisdiction was necessary, on payment of costs or on conditions the court deems just.

Our Supreme Court has broken this court rule down into five separate elements:

> (1) personal jurisdiction over defendants was necessary and acquired, (2) defendants in fact had no knowledge of the action pending against them, (3) defendants entered an appearance within one year after the final judgment, (4) defendants show a reason justifying relief from the judgment, and (5) granting defendants relief from the judgment will not prejudice innocent third persons. [*Lawrence*, 489 Mich at 273.]

The first element is based on the undisputed rule of law that "[a] court 'cannot adjudicate [an in personam] controversy without first having obtained jurisdiction [over the] defendant by service of process . . . .' " *Id.* at 274 (alterations in original), quoting *Eisner v Williams*, 298 Mich 215, 220; 298 NW 507 (1941). "A court must obtain personal jurisdiction over a defendant in order to 'satisfy the due process requirement that a defendant be informed of an action by the best means available under the circumstances.' " *Lawrence*, 489 Mich at 274, quoting MCR 2.105(J)(1). To be clear, MCR 2.612(B) and the first element outlined in *Lawrence requires* that personal jurisdiction was both necessary *and acquired*.

Here, personal jurisdiction was both necessary *and acquired* because Nathan properly served ZenMuse pursuant to MCR 2.105(H)(1), which provides that "[s]ervice of process on a defendant may be made by serving a summons and a copy of the complaint on an agent authorized by written appointment or by law to receive service of process." When ZenMuse filed its application for certificate of withdrawal with the State of Michigan Department of Licensing and Regulatory Affairs (LARA)'s Corporations, Securities, and Commercial Licensing Bureau, it stated as follows with respect to service of process on ZenMuse in Michigan:

> The limited liability company revokes the authority of its resident agent to receive service of process in this state and consents that service of process in any action, suit, or proceeding based upon any cause of action arising in this state during the time the foreign limited liability company was authorized to transact business in this state may thereafter be made on the company by service upon the administrator.

"Administrator" is defined by MCL 450.1402(a) as "the director of the department or his or her designated representative," and "department" is defined as LARA. See MCL 450.4102(f). The next line of the application for certificate of withdrawal identified "[t]he address to which the administrator is to mail a copy of any process against this limited liability company" as King Holmes Paterno & Soriano LLP, Attn: Daniel K. Stuart, Esq., 1900 Avenue of the Stars, 25th Floor, Los Angeles, CA 90067." When he filed his complaint, Nathan filed a proof of service, asserting that he served his complaint on September 21, 2017 by mailing it to ZenMuse, LLC, C/O Administrator, State of Michigan LARA, P.O. Box 30004, Lansing, MI 48908. He additionally included a photograph reflecting that he did, in fact, serve the complaint on that address by certified mail. That is precisely what ZenMuse's application for certificate of withdrawal instructed parties to do. Accordingly, we conclude that "personal jurisdiction over defendants was necessary and acquired."

The second element requires that ZenMuse demonstrate that it "did not 'in fact have knowledge of the pendency of the action' in order to be entitled to relief under MCR 2.612(B)." *Lawrence*, 489 Mich at 275. As the Supreme Court has explained, "the plain language of MCR 2.612(B) permits a defendant to seek relief from a default judgment as long as the defendant did not have actual knowledge of the pending action." *Id*. at 276. Importantly, constructive knowledge is *not* enough. *Id*. at 280.

In her affidavit, Baker asserted that she did not become aware of this case until September or October of 2018. This was long after the default judgment was entered in January of that year. Baker's assertion that she did not have "actual knowledge" of this lawsuit remains uncontradicted.

We make no assessment of Baker's credibility but conclude that the present record establishes that ZenMuse had no knowledge of the action pending against it.

The third element requires that ZenMuse "must have entered an appearance within one year after the final judgment." *Lawrence*, 489 Mich at 280. That element was met here.

The fourth element is more subjective. "[I]t is clear that a defendant seeking relief under MCR 2.612(B) need not show mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, misrepresentation, or other misconduct of an adverse party because MCR 2.612(C) provides for relief from a judgment on those grounds." *Lawrence*, 489 Mich at 281. Rather, "a defendant may satisfy the requirement of a 'reason justifying relief from the judgment' by showing that he or she (1) did not have actual notice of the action and (2) has a meritorious defense." *Id*. at 282. Again, Baker's assertion in her affidavit that she, as ZenMuse's president and sole shareholder, did not have actual knowledge of this suit remans uncontradicted. Therefore, it comes down to whether ZenMuse has a meritorious defense.

ZenMuse claims it "has numerous meritorious defenses" and identifies two that we believe merit discussion. First, ZenMuse contends that " 'aiding in the concealment' is not a civil cause of action" and, "[t]o the extent Nathan was attempting to allege a claim of statutory conversion pursuant to MCL 600.2919(a), any such claim would also fail for the simple reason that ZenMuse did not steal or embezzle any of Nathan's property." ZenMuse asserts that "[t]he lawsuit should also be dismissed pursuant to the holding in *Mather Investors, LLC v Larson*, 271 Mich App 254; 720 NW2d 575 (2006)," because Baker, a necessary party, was not named as a party in this case.

The first defense pertains to Nathan's conversion claim under MCL 600.2919a, which provides:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.
>
> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

"Conversion, both at common law and under the statute, is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Magley v M & W Inc*, 325 Mich App 307, 314; 926 NW2d 1 (2018) (citation and internal quotation marks omitted). "[I]n addition to the common law elements for conversion, a plaintiff claiming statutory conversion must show that the conversion was for the defendant's 'own use.' "

*Id*. at 306 n 3, quoting *Aroma Wines & Equip, Inc v Columbian Dist Serv, Inc*, 497 Mich 337, 356; 871 NW2d 136 (2015).

In his complaint, Nathan's "aiding in the concealment" claim, while otherwise labeled, asserted a statutory-conversion claim pursuant to MCL 600.2919a. See *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007) ("It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim."). Nathan alleged that ZenMuse converted the Dodge Place property by "actively assist[ing] Anita Baker to conceal the Property by converting title to said Property to" it and "further aided in the concealment of personal property contained in the Property at issue which could have otherwise been subject to execution by Ms. Baker's creditors." These allegations do not adequately allege a statutory-conversion claim. Stated simply, Nathan did not allege, much less provide support for, the notion that he (or MGM Restoration) had a property interest in the Dodge Place property at the time of the alleged conversion. Lack of a property interest is fatal to a conversion claim. See, e.g., *Lawsuit Financial, LLC v Curry*, 261 Mich App 579, 592; 683 NW2d 233 (2004) (affirming summary disposition on conversion claims pursuant to common law and MCL 600.2919a).

The second defense pertains to Nathan's MUFTA claim. "The MUFTA defines two species of fraudulent transfers." *Dillard v Schlussel*, 308 Mich App 429, 446; 865 NW2d 648 (2014). One "encompasses transfers made '[w]ith actual intent to hinder, delay, or defraud' a creditor and applies to transfers made either before or after the creditor's claim arose.' " *Id*., quoting MCL 566.34(1)(a). The other, "commonly called 'fraud in law' or constructive fraud, deems certain transactions fraudulent regardless of the creditor's ability to prove the debtor's actual intent," but "applies only to transfers made after the creditor's claim arose." *Id*. Ultimately, "[t]hree elements of proof are required: (1) the creditor's claim arose before the transfer, (2) the debtor was insolvent or became insolvent as a result of the transfer, and (3) the debtor did not receive 'reasonably equivalent value in exchange for the transfer . . . .' " *Id*. at 446-447, quoting MCL 566.35(1).

Rather than addressing these elements or the statutory language at issue, ZenMuse's argument with respect to Nathan's MUFTA claim focuses entirely on the assertion that the claim must "be dismissed pursuant to the holding in *Mather Investors, LLC v Larson*, 271 Mich App 254; 720 NW2d 575 (2006)" because Baker, a necessary party, was not named as a party in this case. *Mather* supports ZenMuse's position. In that case, although this Court began by recognizing that "[t]he plain language of the [M]UFTA does not require the creditor to join the debtor alleged to have made the fraudulent transfer," *id*. at 256, its analysis did not stop there. That "case arose out of Alice Maddock's stay at a nursing center operated by the plaintiff, Mather Investors, LLC, where she allegedly incurred approximately $53,000 in nursing home bills." *Id*. at 255. Around this same time, "Maddock allegedly transferred all her assets, amounting to more than $63,000 in real estate and back account funds, to defendant William Larson." *Id*. Mather Investors sued Maddock and Larson, alleging a breach of contract based on Maddock's failure to pay her nursing-home bills and a fraudulent transfer under MUFTA. *Id*. Mathers Investors "failed to serve Maddock before her death, and she was dismissed from the suit." *Id*. Larson subsequently "moved for summary disposition on the grounds that Maddock or her estate were necessary parties, and defendant could not be liable under the [M]UFTA without a determination that Maddock or her estate were liable to plaintiff on a debt." *Id*. The trial court ultimately ruled in Larson's favor,

and, on appeal, Mathers Investors "argue[d] that a suit under the [M]UFTA to void an allegedly fraudulent transfer does not require the transferor, here Maddock or her estate, to be joined." *Id*. at 255-256. However, "[b]ecause the [M]UFTA clearly does not contain any language requiring joinder of the debtor transferor," this Court made it clear that it would "not imply such a requirement." *Id*. at 259. Instead, consistent with "the venerable rule that joinder is required of all parties 'concerned in the controversy . . . to have their respective interests charged or protected, and to end the controversy once and for all,' " *id*. at 257, quoting *Brown v Kalamazoo Circuit Judge*, 75 Mich 274, 280; 42 NW 827 (1889), this Court identified "[t]he dispositive inquiry" as being "whether the circumstances of the individual case permit complete adjudication without joining the debtor transferor." *Mather*, 271 Mich App at 259. This Court analyzed that issue as follows:

> The circumstances of this case, as the trial court correctly found, clearly do not. The [M]UFTA is analogous to the Bulk Sales Act [the legislation at issue in one of the cases this Court relied on] in two significant ways. First, a "debtor" under the [M]UFTA "means a person who is liable on a claim." MCL 566.31(f). A claim need not be reduced to judgment or undisputed. MCL 566.31(c). However, the transferor must actually be liable for the claim to be a "debtor." Indeed, the remainder of the [M]UFTA appears to presume that liability has already been established. A claim under [M]UFTA cannot proceed otherwise. Furthermore, the [M]UFTA only permits voiding a transaction upon action by the creditor, not by the transferee. See MCL 566.37(1)(a). As was the case in *Paton*[ *v Langley*, 50 Mich 428; 15 NW 537 (1883)], the transferor here has ostensibly parted with any interest in *the assets*. However, the transferor, or her estate, has not parted with an interest in an adjudication of liability to another individual. Therefore, unless the transferor's liability has already been determined in a proceeding that afforded the transferor a meaningful opportunity to defend, the transferor's "presence in the action is essential to permit the court to render complete relief . . . . MCR 2.205(A)." [*Id*. at 259-260.]

Therefore, this Court held, Maddock was a necessary party. *Id*. at 260.

The same result is appropriate here. Again, "[a] 'debtor' under the [M]UFTA 'means a person who is liable on a claim.' " *Id*. at 259, quoting MCL 566.31(f). Baker, not ZenMuse, was purportedly MGM Restoration's—and, therefore, Nathan's—debtor. As "the transferor," Baker "must actually be liable for the claim to be a 'debtor.' " *Mathers*, 271 Mich App at 259. While "[a] claim need not be reduced to judgment or undisputed," *id*., citing MCL 566.31(c), "the transferor must actually be liable for the claim to be a 'debtor,' " *id*. In fact, "[M]UFTA appears to presume that liability has already been established." *Mathers*, 271 Mich App at 259. Here, Baker's liability on an independent claim regarding her purported failure to pay MGM Restoration for the water-remediation services has never been established. In fact, the only case in which it was substantively alleged was apparently in a case by MGM Restoration that was dismissed. The only potential claim *Nathan* has alleged in addition to the one under MUFTA would be the conversion claim, but that has nothing to do with Baker's liability for the water-remediation services at issue; rather, it focuses entirely on the transfer of title for the Dodge Place property. Thus, here, like in *Mathers*, while Baker "has ostensibly parted with any interest in *the assets*," she "has not parted with an interest in an adjudication of liability to another individual." *Id*.

"[U]nless [Baker's] liability has already been determined in a proceeding that afforded the transferor a meaningful opportunity to defend, the transferor's 'presence in the action is essential to permit the court to render complete relief . . . .' " *Id*. at 259-260, quoting MCR 2.205(A). Nathan, as MGM Restoration's assignee, has never brought a claim against Baker to determine her liability in a proceeding during which she would be afforded a meaningful opportunity to defend against her alleged failure to pay for the water-remediation services. Until Baker is afforded a meaningful opportunity to defend her actions in that conflict, we conclude that Baker was a necessary party in any MUFTA claim based on that conflict.

In response to his failure to name Baker as a party in this case, Nathan relies on the doctrine of res judicata. He claims as follows:

> Defendant asserts that Anita Baker is a necessary party to a MUFTA action. But nothing in the statute supports the contention. And on the circumstances of this action, because Anita Baker is the president and sole shareholder of Defendant ZenMuse, and because, under *res judicata*, the outcome in ZenMuse would bind Anita Baker, complete relief is available in this cause of action where ZenMuse is named. . . .

"A subsequent suit between the same parties when the evidence or essential facts remain the same is barred by the doctrine of res judicata." *Energy Reserves, Inc v Consumers Power Co*, 221 Mich App 210, 215; 561 NW2d 854 (1997). It applies if three elements are met: "(1) the former suit must have been decided on the merits, (2) the issues in the second action were or could have been resolved in the former one, and (3) both actions must involve the same parties or their privies." *Id*. at 215-216. If Nathan were to eventually prevail against ZenMuse on a MUFTA claim based on Baker's transfer of the Dodge Place property to ZenMuse, res judicata may well come into play. But it is unclear how the doctrine would apply here. Baker's "presence in the action" was necessary because it was "essential to permit the court to render complete relief" because her liability has not "already been determined in a proceeding that afforded the transferor a meaningful opportunity to defend . . . ." *Mathers*, 271 Mich App at 259-260; see also MCR 2.205(A). In essence, Nathan takes the position that a plaintiff can decline to name "essential" parties in a lawsuit and then rely on the fact that they will be bound by the outcome as a reason for binding them to the outcome. He does not cite legal authority endorsing such a peculiar understanding of res judicata. " 'A party may not leave it to this Court to search for authority to sustain or reject its position.' " *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003), quoting *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996). Consequently, this argument is abandoned. *Id*. Moreover, we expressly decline to endorse the notion that a plaintiff can avoid naming a necessary defendant in a lawsuit where the defendant can be bound by that lawsuit's outcome.

Finally, the Supreme Court has analyzed the fifth element for relief from judgment—that "granting defendants relief from the judgment will not prejudice innocent third persons"—as follows:

> Because this case involves a contract dispute and all the parties to the contract were also parties to this action, it appears that no third parties would be prejudiced if the default judgment were to be set aside. Also, there is no evidence in the record that

> any third parties have an interest in this case. Thus, we conclude that this requirement is met. [*Lawrence*, 489 Mich at 285.]

The same result is warranted here, perhaps even more so. The underlying dispute at issue is between Nathan (as MGM Restoration's assignee) and Baker. Nathan was involved in this case. Although ZenMuse is the defendant in this case, Baker, too, was arguably involved in light of her role as ZenMuse's president and shareholder. Thus, all the parties to the contract were parties to the action. The only third party who might be prejudiced is the receiver, who, by ZenMuse's own admission, incurred at least $38,377.30 in costs. However, it is our view that the receiver's presence, by itself, should not prevent this Court from setting aside the default judgment. Instead, as discussed more below, the trial court should determine whether Nathan, ZenMuse, or both should be responsible for reimbursing the receiver for its costs on remand.

Ultimately, because personal jurisdiction over ZenMuse was necessary and acquired, because ZenMuse (via Baker) has asserted without contradiction that it had no knowledge of this lawsuit, because ZenMuse entered an appearance within one year of the final judgment, because ZenMuse has demonstrated meritorious defenses to both of Nathan's claims as currently pleaded, and because there has been no showing that setting aside the default judgment will prejudice any innocent third parties, ZenMuse satisfied all five elements to be entitled to relief from judgment pursuant to MCR 2.612(B). *Id*. at 273. The trial court did not, however, reach this result. Instead, the trial court's analysis was limited to whether ZenMuse was properly served. However, "actual knowledge," not adequate service or constructive knowledge, is what is required for purposes of MCR 2.612(B). *Id*. at 275-276, 280. Given that all five elements set forth by our Supreme Court in *Lawrence* were satisfied, we conclude that the trial court's decision declining to set aside the default judgment against ZenMuse pursuant to MCR 2.612(B) constituted an abuse of discretion. *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015) ("A trial court's decision regarding a motion to set aside a default judgment is reviewed for an abuse of discretion."). Accordingly, we reverse the trial court's order denying ZenMuse's motion to set aside the default judgment and remand this matter for further proceedings.

We feel compelled to emphasize that this decision was not reached lightly. Ultimately, as the trial court concluded, it appears that ZenMuse was served in the precise manner that it agreed to when it withdrew its authority to transact business in Michigan. This fact, when considered within the context of Baker creating ZenMuse, transferring a $1.5 million home to it without receiving any consideration in return, and then quickly withdrawing its authority to transact business in Michigan, is troublesome. Moreover, it appears likely that Baker was personally aware of this lawsuit as early as April 23, 2018, more than *eight months* before ZenMuse filed its motion to set aside, because she was successfully served by the receiver via first-class mail. However, in our view, nothing in MCR 2.612(B) or the caselaw interpreting and applying it seem to contemplate the consideration of these outside factors. Nonetheless, these circumstances are not completely irrelevant. To begin, even though Nathan's claims as currently pleaded suffer from fundamental flaws, Nathan is entitled to an opportunity to amend his pleadings. "If a trial court grants summary disposition pursuant to MCR 2.116(C)(8), (C)(9), or (C)(10), the court must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile." *Yudashkin v Linzmeyer (On Remand)*, 247 Mich App 642, 651; 637 NW2d 257 (2001) (citation and internal quotation marks omitted). In addition, we anticipate that Baker's and ZenMuse's actions as described above will play a role with respect to how the receiver's costs are

paid, as well as whether, in light of our decision that the default judgment should be set aside, payment of costs or other conditions should be imposed. See MCR 2.612(B) (providing that a court may set aside a default judgment "on payment of costs or on conditions the court deems just"). It is our view that the trial court, not this Court, is in the best position to make these decisions.

### III. ZENMUSE'S MOTION TO DISQUALIFY NATHAN'S COUNSEL

In light of our above conclusion, many of the parties' remaining arguments are no longer necessary to address. One, however, is: ZenMuse's argument that Jamal should be disqualified as Nathan's counsel based on an apparent conflict of interest. "The determination of the existence of a conflict of interest that disqualifies counsel is a factual question that we review for clear error. A trial court's findings of fact are clearly erroneous only if [this Court is] left with a definite and firm conviction that a mistake was made." *Avink v SMG*, 282 Mich App 110, 116; 761 NW2d 826 (2009). However, this Court "review[s] de novo the application of 'ethical norms' to a decision whether to disqualify counsel." *Id*.

When a party moves for the disqualification of another party's counsel, " '[t]he party seeking disqualification bears the burden of demonstrating specifically how and as to what issues in the case the likelihood of prejudice will result.' " *Rymal v Baergen*, 262 Mich App 274, 319; 686 NW2d 241 (2004), quoting *Kubiak v Hurr*, 143 Mich App 465, 471; 372 NW2d 341 (1985). In alleging that Jamal had a conflict of interest in representing Nathan after previously representing Baker in MGM Restoration's case against her, ZenMuse relies on MRPC 1.9, which provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
>
> (b) Unless the former client consents after consultation, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated has previously represented a client
>
> (1) whose interests are materially adverse to that person, and
>
> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

-10-

It is undisputed that Jamal represented Baker in MGM Restoration's claim against her based on her failure to pay for the water-remediation services. It is likewise undisputed that Jamal is now representing Nathan, who is standing in MGM Restoration's shoes as its assignee, on that same claim based on Baker's failure to pay for the water-remediation services. Finally, it is undisputed that Baker did not consent to Jamal's representation of Nathan in this case. Because Jamal, in the most literal sense, switched sides on that claim, Jamal's representation of Nathan after representing Baker provides a fairly straightforward example of the conflict of interest prohibited by MRPC 1.9(a): "A lawyer [Jamal] who has formerly represented a client [Baker] in a matter [the matter involving MGM Restoration's water-remediation services] shall not thereafter represent another person [Nathan] in the same or a substantially related matter [the matter involving MGM Restoration's water-remediation services] in which that person's [Nathan's, as MGM Restoration's assignee's] interests are materially adverse to the interests of the former client [Baker, ZenMuse's president and sole shareholder] unless the former client consents after consultation."

Thus, Jamal had a conflict of interest. In fact, Jamal, as Nathan's attorney, seemed to concede as much when he acknowledged that he "would likely have information that would justify a disqualification" and would, therefore, "agree that he should be disqualified" in the event the default judgment was set aside. To the extent that concession is qualified by the claim that there is no "conflict of interest with respect to the Parties in the case as it is currently postured," such a qualification is irrelevant for purposes of MRPC 1.9(a) as well as conflict-of-interest principles in general. Jamal had a conflict of interest: The fact that this case did not reach the substance of Nathan's allegations—although it may on remand—does not impact whether an impermissible conflict of interest existed. Likewise, that Jamal "never represented Zenmuse, and does not have any 'inside' information with respect to" ZenMuse, is largely irrelevant because MGM Restoration's (or its assignee's) claim based on Baker's failure to pay for the water-remediation services was (or at least should have been) against Baker, not ZenMuse. Moreover, MRPC 1.9(a) prohibits the attorney from representing another individual when that person's interests are "materially adverse to the interests of the former client," which adequately implicates both Baker and ZenMuse.

As part of this issue, ZenMuse also challenges the trial court's decision to require it to deposit $219,892.70 in an escrow account while this appeal was pending. According to ZenMuse, "given the impropriety of the underlying proceedings that [led] to the appointment of a receiver sale, the Property never should have been subjected to receivership proceedings." "Thus," it continues, "the appointment of a receiver to sell the Property—a harsh remedy—was unnecessary and improper." However, it was *ZenMuse* that requested this relief: "ZenMuse proposes to deposit $219,892.70 in an escrow account with the Court." ZenMuse cannot now complain that the trial court did exactly what it asked the trial court to do. See, e.g., *Dresselhouse v Chrysler Corp*, 177 Mich App 470, 477; 442 NW2d 705 (1989) ("A party is not allowed to assign as error on appeal something which his or her own counsel deemed proper at trial since to do so would permit the party to harbor error as an appellate parachute.").

IV. ZENMUSE'S INDEPENDENT CAUSE OF ACTION

In light of our decision with respect to Nathan's motion to set aside the default judgment, our analysis with respect to ZenMuse's independent cause of action is relatively straightforward.

Michigan's appellate courts review a trial court's decision to grant or deny a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 120. When "evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion." *Id*., citing MCR 2.116(G)(5). If "the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*., citing MCR 2.116(C)(10); MCR 2.116(G)(4); *Quinto v Cross & Peters Co*, 451 Mich 358; 547 NW2d 314 (1996).

"In Michigan, an independent action in chancery for relief from a judgment has been long recognized." *Trost v Buckstop Lure Co*, 249 Mich App 580, 585; 644 NW2d 54 (2002), citing Michigan Court Rules Practice, Rule 2.612, § 2612.17, p 483. Specifically, MCR 2.612(C)(3) provides that subrule (C) "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding; to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court." This Court has recognized that

> five essential elements must be satisfied for a party to be entitled to independent equitable relief: (1) the judgment is one that ought not, in equity and good conscience, be enforced, (2) there is a valid defense to the alleged cause of action on which the judgment is founded, (3) fraud, accident, or mistake prevented the defendant from obtaining the benefit of the defense, (4) there was no negligence or fault on the part of the defendant, and (5) there is no adequate remedy available at law. [*Trost*, 249 Mich App at 589.]

Here, because there is an adequately remedy available at law, i.e., under MCR 2.612(B), ZenMuse's independent cause of action fails.

## V. CONCLUSION

For all of these reasons, we reverse the trial court's order denying ZenMuse's motion to set aside the default judgment, reverse the trial court's decision denying ZenMuse's motion to disqualify Jamal as Nathan's counsel, and remand this matter for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Karen M. Fort Hood